**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-6765**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

BRAD ACY HOLLEY,

Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:19−cr−00245−10)

Argued:  May 5, 2026                                            Decided:  July 1, 2026

Before WILKINSON, RICHARDSON, and BERNER, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Richardson and Judge Berner joined.

**ARGUED:**  Zachary Ryan Rohrbaugh, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  Gabriel Caleb Price, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Lawrence D. Rosenberg, JONES DAY, Washington, D.C.; Mary Claire Davis, United States Supreme Court Litigation Clinic, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  Moore Capito, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

WILKINSON, Circuit Judge:

Brad Acy Holley moved for compassionate release due to his end-stage renal disease. The district court denied his motion, finding that the particular circumstances of his medical condition did not constitute an extraordinary and compelling reason for a sentence reduction. We now affirm.

The decision to grant or deny compassionate release lies in the sound discretion of the district court. That discretion cuts both ways. Sometimes it will cut against a prisoner; other times it will cut in his favor. So long as the district court does not abuse its discretion, however, we will not disturb its decision. There was no abuse of discretion here.

I.

In 2020, Holley pled guilty to conspiring to distribute methamphetamine and was sentenced to 127 months' imprisonment. One of the factors Holley asked the district court to consider at sentencing was "his poor physical condition." J.A. 45. Among other health issues, Holley suffered from polycystic kidney disease and had only fifteen percent kidney function.

Holley's kidney function has deteriorated since then. In 2021, he began receiving dialysis to treat end-stage renal disease. He now resides in a medical center for federal prisoners where he takes daily medications, receives dialysis three times a week, participates in monthly consultations with a kidney specialist, and undergoes regular monitoring by a physician assistant.

In 2023, Holley asked the district court to appoint counsel to assist him in filing a motion for compassionate release. The court denied the motion and explained to Holley

2

that he could file the motion on his own after exhausting his administrative remedies. Holley then requested a reduction in his sentence from the Bureau of Prisons. In his application, he explained that he needed a kidney-friendly diet and a kidney transplant, neither of which he believed he could receive in prison.

The Bureau of Prisons denied his request. While it acknowledged that Holley had chronic medical issues, it did not believe his end-stage renal disease warranted early release. It also encouraged him to discuss his interest in a kidney-friendly diet and a kidney transplant with his doctor. Holley had indeed reached out to his doctor (on the same day that he filed his request with the Bureau of Prisons) regarding his dietary concerns. However, the record does not reflect that he ever asked his doctor about the possibility of receiving a kidney transplant. *See* Reply Br. at 14 (noting only that Holley indicated his desire for a kidney transplant in his application to the Bureau of Prisons).

Holley also filed a motion for compassionate release in the district court.[1] Accompanying it was a request to appoint both counsel and an expert witness.

The district court began by denying the latter, concluding that Holley was not entitled to counsel for the compassionate-release proceeding and that a medical expert was "unnecessary for understanding the issues presented." J.A. 111. The court then denied his

---

[1] Holley filed this motion only five days after submitting his request to the Bureau of Prisons and before he had received a response, arguably violating the claim-processing rule in 18 U.S.C. § 3582(c)(1)(A). But we need not consider whether Holley properly exhausted his administrative remedies or whether the government properly preserved the issue because we affirm the district court's denial of compassionate release on the merits. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) (holding that the claim-processing rule in § 3582(c)(1)(A) is not jurisdictional).

motion for compassionate release, finding that "there [we]re no extraordinary and compelling reasons to modify [Holley's] sentence." J.A. 113. Holley timely appealed.

II.

Once imposed, a prison sentence generally cannot be modified. 18 U.S.C. § 3582(c). Compassionate release is an exception to this rule. It allows the district court to reduce a defendant's sentence when, after considering the relevant sentencing factors, it believes "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).

Defendants are not entitled to compassionate release as a matter of right. The decision to grant or deny such relief is up to the district court, and we review its decision only for abuse of discretion. *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). This accords with the deference traditionally afforded to district courts on issues of sentencing, which reflects the "institutional advantage" they possess "over appellate courts in making these sorts of determinations." *Koon v. United States*, 518 U.S. 81, 98 (1996).

There are of course some legal constraints upon the discretion of the district court. The Supreme Court has identified certain criteria that do not qualify as extraordinary and compelling. *See Fernandez v. United States*, 146 S. Ct. 1292, 1298 (2026); *Rutherford v. United States*, 146 S. Ct. 1320, 1335 (2026). And the Sentencing Commission has been tasked with "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). But within these metes and bounds, determining whether a particular defendant has extraordinary and compelling reasons to

4

warrant compassionate release is in the hands of the district court. *See Davis*, 99 F.4th at 655–56. For it "has access to, and greater familiarity with, the individual case and the individual defendant before [it] than the Commission or the appeals court." *Rita v. United States*, 551 U.S. 338, 357–58 (2007).

Holley argues the district court abused its discretion here by rejecting two extraordinary and compelling reasons he raised in his motion. We consider each in turn.

### A.

Holley first claims that his end-stage renal disease justifies compassionate release because it is a terminal illness.

The district court did not question that terminal illness can be an extraordinary and compelling reason for granting a sentence reduction. *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(A) (U.S. Sent'g Comm'n 2023). However, it found that Holley was not suffering from a terminal illness. Terminal illness refers to "a serious and advanced illness with an end-of-life trajectory." *Id.*; *accord* 18 U.S.C. § 3582(d)(1). According to the district court, Holley's medical records provided "no indication that his disease has 'an end-of-life trajectory.'" J.A. 112–13. On the contrary, the district court explained, those records indicated "that he [was] responding well to treatment." J.A. 112.

Holley does not contend on appeal that the district court misinterpreted his medical records. Instead, he cites statistics showing that the average life expectancy for patients on dialysis is only five to ten years. But generalized statistics tell us little about Holley's particular condition. There is considerable variation in how patients respond to dialysis and what their overall health prognosis indicates. Both Holley and the government agree that

patients can live for twenty or even thirty years on dialysis. Response Br. at 18; Reply Br. at 10. The district court was therefore justified in focusing on Holley's specific medical records rather than statistical probabilities about a broader patient population.

Holley disagrees with this individualized approach. In his view, end-stage renal disease is categorically a terminal illness. Aside from the statistical evidence, he points out that end-stage renal disease is irreversible and fatal if left untreated. He also makes much of the fact that the Sentencing Commission's applicable policy statement expressly lists "end-stage organ disease" as an example of a terminal illness. U.S. Sent'g Guidelines Manual, *supra*, § 1B1.13(b)(1)(A).

We certainly do not make light of Holley's medical condition or of the care that he and others must take in its treatment. We cannot, however, accept Holley's categorical view. While end-stage organ disease can be a terminal illness, nothing in the Commission's policy statement indicates that it should be regarded as one in every instance. Such a per se rule would needlessly distort the meaning of the term "terminal illness" and undermine the discretion that district courts are generally afforded in this context. *See Gall v. United States*, 552 U.S. 38, 51–53 (2007). It remains the role of the district court to determine in each case whether the defendant's end-stage organ disease is a terminal illness "with an end-of-life trajectory." U.S. Sent'g Guidelines Manual, *supra*, § 1B1.13(b)(1)(A).

The fact that end-stage renal disease is irreversible and fatal without treatment does not suffice on its own to satisfy this standard. Many life-threatening, incurable conditions can thankfully be managed with proper care. The defendant must instead establish that his disease is progressing despite treatment and is expected to continue progressing to the point

6

of causing death. If treatment is effective in stabilizing the disease, then a district court could reasonably find that it does not currently have an end-of-life trajectory. That is the case here. Perhaps Holley's condition will worsen again in the months or years ahead, but he has provided no factual basis on which to question the district court's conclusions regarding his condition at present.

## B.

Holley alternatively claims that his end-stage renal disease warrants compassionate release because it "requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C).

The district court again did not question that this circumstance can be an extraordinary and compelling reason to grant a sentence reduction. However, it found that the Bureau of Prisons is providing him with "regular, thorough care." J.A. 113. Indeed, Holley himself acknowledged in his motion that he is being provided with several daily medications, dialysis three times a week, monthly consultation with a kidney specialist, and regular monitoring by a physician assistant. J.A. 64. While he says his dialysis treatments take a serious toll on his well-being, he does not indicate that dialysis treatment outside of prison would exact any less of one.

Holley does not dispute any of this on appeal. Instead, he claims the medical care he requires to preserve his health is a kidney transplant, which he is "highly unlikely to receive . . . in prison." Opening Br. at 25. For support, Holley again cites generalized

7

statistics rather than the record in this case. These statistics indicate that roughly two-thirds of transplant centers are unwilling to provide organ transplants to prisoners. *Id.* at 26.

There is good reason for Holley to ignore the record. As far as we can tell, nothing in it suggests that he cannot receive a kidney transplant while incarcerated. In fact, when Holley mentioned his desire for a kidney transplant in his application for a sentence reduction, the Bureau of Prisons told him to speak with his doctor about the possibility. J.A. 87. Holley's briefs do not point to anything in the record that suggests he ever did so. For its part, the government says Bureau of Prisons policy allows inmates to receive transplants. *See* Fed. Bureau of Prisons, U.S. Dep't of Just., Policy Statement No. 6031.05, Patient Care § 25, at 58–59 (2024). And even the statistics Holley cites indicate that transplant centers *are* willing to provide organ transplants to prisoners.

In any event, the likelihood that Holley will receive a kidney transplant once he is released from prison is similarly speculative. Kidney transplants, like transplants for other organs, can involve long lines and waits. While Holley says three people in his life are willing to donate a kidney to him, his briefs point to nothing in the record beyond Holley's own statement that reflects their willingness to do so. Nor is there any evidence that they are capable of donating a kidney.

Given these deficiencies in the record, we cannot say that the district court abused its discretion in finding that Holley was receiving appropriate treatment in prison.

### III.

Holley next claims that the district court erred in denying Holley's request for the appointment of counsel and an expert witness.

8

Holley first argues that he was legally entitled to counsel as a matter of due process. In *United States v. Legree*, 205 F.3d 724 (4th Cir. 2000), we acknowledged that "in some exceptional cases due process does mandate the appointment of counsel for certain postconviction proceedings." *Id.* at 730. However, we concluded that a § 3582(c) motion for a reduction in sentence "does not fit into this category" because it "is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution." *Id.* (quoting *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999)); *accord United States v. Manso-Zamora*, 991 F.3d 694, 696 & n.2 (6th Cir. 2021) (per curiam) (collecting cases and noting that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"). Our decision in *Legree* controls here.

While Holley was not entitled to the assistance of counsel, the district court could have requested it on his behalf. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). The decision to do so is discretionary, however, and a district court abuses its discretion only "where the case . . . presents exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296 (1989). There were no exceptional circumstances here. Holley's motion ably articulated the relevant legal and factual bases for his claim.

Finally, Holley argues that the district court should have appointed an expert witness to aid its review of his medical records. *See* Fed. R. Evid. 706(a). Determining whether a court-appointed expert will aid the trier of fact is yet another issue that falls within the

9

sound discretion of the district court. *Stevenson v. Windmoeller & Hoelscher Corp.*, 39 F.4th 466, 469 (7th Cir. 2022). Such deference is even more warranted where, as here, the trier of fact is the district judge. It is a rare case when we would know better than the district judge what would be most helpful to that court's own review of the evidence. This is not one of those rare cases. After reviewing Holley's medical records, the district court reasonably determined that it did not require the aid of a medical expert to understand the issues presented.

Finding no abuse of discretion in the district court's judgment, we affirm it in all respects.

*AFFIRMED*